**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDY LEE MORRIS,<br><br>          Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>          Defendant. | Case No. 1:14-cv-02048-SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

  Plaintiff Candy Lee Morris seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for supplemental security income ("SSI") under Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) ("the Act"). The matter is before the Court on the parties' cross-briefs, which were submitted without oral argument. After a review of the record and applicable law, the Court concludes the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and free of legal error and, accordingly, affirms the ALJ's decision.

I.       PROCEDURAL HISTORY AND FACTUAL BACKGROUND[1]

A. *Procedural History*

Plaintiff applied for SSI on August 5, 2011. She alleged disability beginning on August 5, 2011. AR 29. The Commissioner denied the claims on November 17, 2011, and upon reconsideration, on May 1, 2012. AR 69, 110. Plaintiff then filed a timely request for a hearing. AR 117.

Plaintiff appeared and testified before an ALJ, Danny Pittman, on April 11, 2013. Also at the hearing were Plaintiff's counsel and an impartial vocational expert, Mr. Chiparo. AR 26. In a written decision dated June 21, 2013, the ALJ found Plaintiff was not disabled under the Act. AR 22. On October 28, 2014, the Appeals Council denied review of the ALJ's decision, which thus became the Commissioner's final decision. AR 1. Plaintiff filed a timely complaint. Doc. 1.

B. *Factual Background*

The Court will not recount in detail all of the facts of this case, discussing only what is relevant for purposes of this order.

1. Plaintiff's testimony

Plaintiff was born on October 1, 1958, and had three children. She completed high school and received an Associate of Arts in Liberal Studies from Mercer College in 1993. AR 30-32. Plaintiff testified to having panic attacks which prevented her from working. AR 36. She last worked for a week and a half after the alleged disability onset date, but was laid off. AR 33-34.

At the time, Plaintiff's physician was Dr. Sarah Morgan, a psychiatrist from Sierra Vista Clinic, where Plaintiff went for all her treatment needs. She testified to taking Topomax, Wellbutrin, Buspar, Trazadone, and a generic brand of Visceral. While the medications helped control Plaintiff's mental symptoms, the negative effects included upset stomachs. AR 36-38.

Plaintiff admitted to smoking, and that she had a history of drug use and alcohol. Plaintiff

---

[1] The relevant facts herein are taken from the Administrative Record ("AR").

2

had memory and concentration problems, did not like to be around people, and suffered from panic attacks.  The panic attacks occurred as often as five or six times a week, lasting from between half an hour to four hours each time.  She also had trouble falling asleep and staying asleep.  Plaintiff could do most household chores, mow the lawn, manage money, and go grocery shopping, but did not think she could maintain any job.  AR 38-48.

2. Plaintiff's Adult Function Report

On August 24, 2011, Plaintiff completed an adult function report.  Therein, Plaintiff stated feeling too depressed or overwhelmed at times to engage in personal care.  She cleaned, did laundry, and took care of the lawn and garden.  She was also able to handle money.

Sometimes Plaintiff did not like being around people.  She began holding back and developed trust issues as a result of her conditions.  She struggled to remember the placement of things, concentration became difficult, and she would get overwhelmed when completing tasks.  Plaintiff lost self-confidence and would get nervous.  AR 186-190.

3. Third Party Function Report

Melissa Vandever, a staff member at the halfway house where Plaintiff resided, completed a Third Party Adult Function Report on August 29, 2011.  Ms. Vandever had known Plaintiff for nine months and was her mentor.  They spent eight hours a day, four days a week together.  According to Ms. Vandever, Plaintiff forgets to wash her clothes, needed to be reminded to care for herself, forgets to brush her hair, and would go a whole day without eating unless she was reminded.  Plaintiff could not do household chores and was mentally unfit to do house or yard work.  She was "very needy" with daily activities.  She got lost easily and was very down on herself.  Her anxiety made her frantic.  Plaintiff had trouble handling money as she forgets where she puts it.  Plaintiff struggled to interact with others due to her anxiety.   AR 193-198.

4. Medical Evidence

3

Records showed Plaintiff received psychiatric medications while serving time in federal prison for conspiracy to distribute and possession with intent to distribute methamphetamine. AR 232-271. Sometime after her release, Plaintiff was evaluated and began receiving psychiatric care at the Sierra Vista Clinic from Dr. Morgan, who also referred Plaintiff to Fresno Behavioral Health for mental health services. AR 272-305.

For purposes of determining Plaintiff's disability status, a state agency medical consultant, Dr. Barbara Moura, reviewed Plaintiff's record. On November 17, 2011, Dr. Moura concluded that while Plaintiff had a severe psychiatric medically determinable impairment, it did not preclude her from all gainful activity. AR 61-62. Plaintiff's RFC assessment reflected no significant limitations in sustained concentration and persistence, social interactions, and adaptations. She could understand and remember simple and complex tasks, was "limited to carrying out simple 1-2 and detailed 2-3 step tasks throughout a regular 40hr workweek/day w/ customary breaks for risk of decompensation," and could interact appropriately with peers and supervisor, but was to have limited public contact. AR 65-66. Another state agency medical consultant, Dr. Heather Barrons, made similar RFC assessments on April 30, 2012. AR 90-91.

On October 27, 2011, Dr. Richard Engeln conducted a psychological evaluation of Plaintiff at the request of the California Department of Social Services. AR 307. Dr. Engeln found Plaintiff had no restrictions in the following areas:

- Understanding and remembering detailed or complex instructions,
- Carrying out simple instructions,
- Attendance and concentration,
- Interact with the public, coworkers and supervisor,
- Performing work activities without special or additional supervision, and
- Adapting to usual stresses encountered in a work setting.

He also found Plaintiff "[v]erbally, cognitively, and socially . . . capable of job adjustment in a context where instructions are multidimensional and independence is demanded." Her "[c]oncentration and social skills are adequate for work adjustment," with "[r]estrictions to job

4

adjustment potential . . . related to life adjustment situation." But "[e]motional and personality style issues may be intrusive and limiting in job adjustment." AR 312.

On April 3, 2013, Dr. Morgan completed a Mental Impairment Questionnaire.[2] Therein, she indicated that Plaintiff had been under her care since March 22, 2011 at monthly intervals. Dr. Morgan diagnosed Plaintiff with posttraumatic stress disorder (PTSD), panic disorder with agoraphobia, and severe depression with recurrent obsessive compulsive disorder. She assigned Plaintiff a global assessment functioning (GAF) score of 50.[3] Plaintiff's treatment included multiple medication trials, yet she was still symptomatic. Dr. Morgan prescribed Plaintiff with Buspar, Wellbutrin, Trazodone, Vistaril, and Topamax. The side effect from these medications was upset stomach. AR 374.

Dr. Morgan found Plaintiff easily overwhelmed, unable to concentrate, easily confused, unable to follow through with simple instructions, and had difficulty being around others. Her "emotional pain exacerbates all physical pain." Plaintiff did not have a low IQ or reduced intellectual functioning. AR 374-376.

With regard to functional limitations, Dr. Morgan opined that Plaintiff (1) had zero to mild restrictions of activities of daily living, (2) extreme difficulties in maintaining social functioning, (3) extreme deficiencies of concentration, persistence or pace, and (4) had one or two repeated episodes of decompensation within the a twelve month period, each lasting two weeks in duration. AR 376. Plaintiff's mental impairment caused more than a minimal limitation of ability to do basic work

---

[2] Dr. Morgan presumably completed the questionnaire following Dr. Moura's recommendation on September 16, 2011, that Plaintiff's psychiatrist complete a Mental Disorder Questionnaire. AR 61.
[3] "[A] rating of 50 on the GAF Scale, reflect[s] serious symptoms or any serious impairment in functioning, for example, being unable to keep a job. A GAF rating of 50 does not represent functioning within normal limits." *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010) (citation omitted).

activity, and minimal increase in mental demands or change in the environment would cause Plaintiff to decompensate. Plaintiff would be absent from work for more than four days per month. AR 376-377.

5. <u>ALJ's Decision</u>

A claimant is disabled under Titled II and XVI if she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of no less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process which an ALJ must employ to evaluate an alleged disability.[4]

The ALJ here employed the five-step sequential process and found Plaintiff was not disabled under the Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 5, 2011. At step two, Plaintiff had the following severe impairments: major depressive disorder, anxiety disorder, and personality disorder. At step three, Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Based on all of the impairments, Plaintiff had the residual functional capacity (RFC) to perform a full range of work at

---

[4] The ALJ must determine: "(1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (quotations, citations and footnote omitted); 20 C.F.R. §§ 404.1520; 416.920 (2011). Residual functional capacity is "the most" a claimant "can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a) (2011). "The claimant carries the initial burden of proving a disability in steps one through four of the analysis. However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

all exertional levels, but is limited to performing simple and routine tasks with limited public contact.  At step four, Plaintiff was unable to perform any past relevant work.  And at step five, there were jobs existing in significant numbers in the national economy which Plaintiff could perform, considering her age, education, work experience, and RFC.  They included commercial or institutional cleaner, house cleaner, and landscape laborer.  AR 13-22.

## II.  DISCUSSION

A.  *Legal Standards*

This Court reviews the Commissioner's final decision to determine if the findings are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 401 (1971)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401. "If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner.  However, we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotations omitted).  "If the evidence can support either outcome, the Commissioner's decision must be upheld."  *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see* 42 U.S.C. § 405(g) (2010).  But even if supported by substantial evidence, a decision may be set aside for legal error. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Nevertheless, an ALJ's error is harmless "when it was clear from the record that [the] error was inconsequential to the ultimate nondisability determination."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

B.  *Analysis*

7

Plaintiff contends the ALJ's reasons for rejecting Dr. Morgan's opinion—that the record was inconsistent and unsupported by objective evidence, and based on Plaintiff's subjective evidence— were insufficient as a matter of law. The ALJ was, according to Plaintiff, conclusory and was required to specify the evidence he relied on in rejecting Dr. Morgan's opinion. The Commissioner avers the ALJ properly evaluated and rejected Dr. Morgan's opinion.

"Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (footnote and citation omitted). To reject a treating physician's opinion which is contradicted by another physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record. *Id.* (internal quotations omitted); *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010). If the treating physician's opinion is not contradicted by another physician, the ALJ must provide "clear and convincing" reasons supported by substantial evidence in the record. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). But an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quotations and citation omitted).

The ALJ expressly gave "very little weight to Dr. Morgan's opinion," referring to the Mental Impairment Questionnaire. AR 19. He explained that Dr. Morgan's opinion was "inconsistent with and not supported by any objective medical evidence . . . [and] is based on the [Plaintiff's] subjective complaints, which are not fully credible[.]" AR 19. Because Dr. Morgan's opinion was contradicted by state agency examiners Drs. Moura and Barrons, as well as Dr. Engeln, the ALJ was required to give specific and legitimate reasons.

8

Plaintiff is partly correct with regard to the ALJ's expressed rationales. The questionnaire did not reflect Dr. Morgan's reliance on Plaintiff's subjective complaints. To illustrate that Plaintiff was not fully credible, the ALJ discussed a number of inconsistencies, beginning with Plaintiff's reporting of sexual abuse. He noted that on October 16, 2008, Plaintiff reported no history of sexual abuse during her intake screening at the federal correctional institution in Phoenix, AZ, yet a few years later on August 19, 2010, and April 6, 2011 she spoke of past sexual abuse. AR 263, 250, 280. Next, the ALJ discussed the fact that despite Plaintiff's complaints of hearing voices, and suffering from depression, and panic attacks since childhood, medical records show she only began receiving psychiatric medication while incarcerated.[5] AR 272, 276, 280, 284. He then noted that Plaintiff declined further psychological treatment or services on several occasions while incarcerated and cited to her intake screening on July 17, 2009, counseling sessions on August 19, 2010, and April 22, 2010 AR 250,-251, 255.

The ALJ also discussed instances of Plaintiff failing to comply with her treatment, and cited to a December 14, 2009 prison note indicating such. The note stated that Plaintiff's non-compliance with psychiatric treatment appeared to coincide with her decompensation and attitude and performance in the residential drug abuse program journal and process groups. AR 252. Also problematic were Plaintiff's missed appointments with Dr. Morgan in 2011 and 2012 . AR 295, 299, 339, 343, 344. Finally, the ALJ discussed the Third Party Function report and correctly noted inconsistencies therein with Plaintiff's own adult function report and testimony with regard to activities of daily living and money management. AR 45, 187-189, 195-197. Indeed, these demonstrated to the ALJ Plaintiff's lack of credibility.

But it is not clear that Dr. Morgan's opinion in the questionnaire was based on Plaintiff's subjective and self-serving complaints. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

---

[5] The ALJ also stated Plaintiff complained of suffering from anxiety since childhood. The record which he cited, however, reflected complaints of anxiety, but not since childhood.

9

2008) ("An ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible.")  At most, an inference can be made that Dr. Morgan adopted Plaintiff's statements with regard to the side effects of medications, namely the upset stomach which Plaintiff testified about.  Nowhere else is there evidence of Dr. Morgan's reliance on Plaintiff's subjective complaints.  The ALJ's reason for giving Dr. Morgan's opinion very little weight based on Plaintiff's lack of credibility is therefore unsupported.  Nevertheless, the ALJ also provided a specific and legitimate reason.

Contrary to Plaintiff's assertion, the ALJ's rationale did not comprise solely of one sentence. Doc. 12, pg. 10.  To conclude that the ALJ's rationale is insufficient, Plaintiff would have the court read the ALJ's decision in a piecemeal fashion, and that it will not do.  The ALJ's other reason—Dr. Morgan's opinion was inconsistent with and not supported by objective medical evidence—is well founded.  Specifically, the ALJ discussed monthly progress notes from Dr. Morgan beginning in March 2012 to April 2013, which indicated Plaintiff appeared oriented to person, place, time and situation, exhibited intact thought process, normal speech, and fair concentration and insight.  While the progress notes reflected assessments of posttraumatic stress disorder (PTSD) and panic disorder with agoraphobia, the assessments are conclusory and devoid of analysis. AR 329-365. *Cf.* 20 C.F.R. § 404.1527 (2011) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.")  Additionally, the progress notes generally indicated Plaintiff reporting that the medications were helpful.  The notes did not support the opinion set forth in Dr. Morgan's questionnaire.  That Dr. Morgan's opinion was not supported by objective medical evidence is therefore a specific and legitimate reason to discount the findings.

### III.  CONCLUSION

Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the

Commissioner of Social Security.[6]  The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

Dated: **February 17, 2016**          **/s/ Sandra M. Snyder**
                                       UNITED STATES MAGISTRATE JUDGE

---

[6] Finding the ALJ did not commit reversible error, the Court need not address Plaintiff's discussion of the "credit-as-true" rule.